# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GUSTAVO MCKENZIE,

Plaintiff,

v.

E. BANUELOS, et al.,

Defendants.

Case No. 1:14-cv-00434 AWI DLB PC

FINDINGS AND RECOMMENDATION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND

THIRTY-DAY DEADLINE

Plaintiff Gustavo McKenzie ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on March 25, 2014. On March 11, 2015, the Court screened the complaint and dismissed it with leave to amend. On April 8, 2015, Plaintiff filed a First Amended Complaint. He names Correctional Officers E. Banuelos, L. Gallardo, G. Stoll, and Charlet, Correctional Sergeant D. B. Hernandez, and Appeal Coordinators S. Harrison and Karen Cribbs as Defendants.

**A. SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## B. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff's factual allegations in his First Amended Complaint are essentially the same as in his initial complaint. Plaintiff is currently housed at CSP-Sacramento; however, he was housed at California State Prison ("CSP"), Corcoran, in the Security Housing Unit ("SHU") at Facility A, when the events giving rise to this action took place.

Plaintiff alleges the following. In 2011, Plaintiff was housed at Lancaster State Prison. On

December 29, 2011, he was placed in the Administrative Segregation Unit ("Ad Seg"). As a result of his placement in Ad Seg, his personal property was taken from him and inventoried by Correctional Officer A. Lois.

On April 20, 2012, Plaintiff was transferred to CSP and housed in the SHU. On April 20, 2012, he was moved to another cell in the SHU. On April 23, 2012, he was temporarily placed in Ad Seg pending approval of another cell move. On April 24, 2012, he returned from the Ad Seg yard to his cell to find 8 paper bags containing his personal property which consisted of legal documents, 3 law books, 1 dictionary, and 18 soup containers. Plaintiff asked to speak to a property officer, and Officer Yale responded. Yale advised him that his tennis shoes, beanie, sweatshirt, cervical pillow, etc., were not allowed in Ad Seg. Yale gave Plaintiff a copy of the SHU's inventory list and left.

Later that day, Plaintiff was taken back to the SHU. After he unpacked, he compared his original inventory list from Lancaster with the SHU inventory list he received from Officer Yale. He noticed that the SHU inventory list did not contain certain items that were on the Lancaster list, such as typewriter ribbons, cervical pillow, and photos.

On April 25, 2012, Defendant Gallardo came to the cell with a paper bag containing Plaintiff's tennis shoes and beanie. Plaintiff asked her where the rest of his property was, and she advised that it was in Ad Seg. Plaintiff responded that he was not in Ad Seg, but assigned to the SHU, and he did not have all of his allowable property. He also advised that the inventory list did not reflect all of the items on the prior inventory list. Defendant Gallardo became flustered and stated, "I am not a regular," and she walked off carrying his tennis shoes and beanie. Plaintiff wrote a grievance based on the incident, but the grievance disappeared.

On May 7, 2012, Defendant Stoll came to the cell with the paper bag containing shoes and beanie. Plaintiff showed Stoll the discrepancies in the two inventory lists. Defendant Stoll stated, "I don't inventory this shit – I pass it out." Plaintiff then advised Stoll that there were other articles of personal property that he should be entitled to receive such as his book, cervical pillow, magazines, and glasses. Stoll responded, "Write a kite to Sergeant Tomakda/Tomakta," and he walked away with the paper bag. Plaintiff immediately wrote an Inmate Request for Interview and submitted it to

"Sgt. Tomakta" but he received no response. He submitted another request and received no response. He submitted a third request, and it was returned on July 31, 2012, with the assertion that Plaintiff had already appealed the issue.

On May 10, 2012, Plaintiff submitted a second grievance (Log #CSPC-5-12-03080) which was not returned until he sent a third grievance and letter to the warden. After he sent the letter to the warden, Plaintiff sent a letter to the Office of Internal Affairs, which refused to investigate the matter and instead forwarded the letter to Captain R. Whitford who refused to investigate and accused Plaintiff of circumventing the appeal process.

Plaintiff then sent an Inmate/Parolee Request (CDCR-22) to Sgt. Tomakta explaining the ongoing problem. Defendant Banuelos responded on June 11, 2012, contending that all of Plaintiff's allowable property was issued to Plaintiff, and that Plaintiff "was refusing to accept [his] tennis shoes and beanie, and sweatshirt." Plaintiff alleges this was an outright lie since Defendant Banuelos had not brought any property to him.

On May 31, 2012, Plaintiff was advised by the floor officer to send a CDCR-22 to Banuelos, which he did. Banuelos answered that Plaintiff "had refused [his] property while housed in '4A4L-24,' and also refused to sign a CDCR-193." Banuelos further threatened that they would dispose of the property.

On June 11, 2012, Defendant Charlet came to the cell with the paper bag containing tennis shoes and beanie. Plaintiff brought to Charlet's attention that he was not being afforded all of his allowable property including glasses, cervical pillow, books and magazines, and that his typewriter ribbons, pillow and photos were not reflected on the inventory list. Plaintiff explicitly stated he was not refusing his property and that all he wanted was the rest of his allowable property and that he needed to see whether his appliances worked before sending them home. Charlet responded, "I'll let them know," and walked away with the bag containing shoes and beanie.

After Plaintiff wrote a letter to the warden, the second and third grievances were returned. Plaintiff resubmitted the second grievance and attached a copy of the Lancaster inventory list. The grievance was directed to the Associate Warden in 4A, who delegated it to Defendant Hernandez. Hernandez interviewed Plaintiff on June 25, 2012. Plaintiff alleges Hernandez disregarded

everything Plaintiff pointed out, including the discrepancies between the property inventory lists and the fact he hadn't been issued his allowable property. Defendant Hernandez became argumentative. He called the SHU property officers and returned, stating, "they issued you your tennis shoes and glasses." Plaintiff stated that they had not. Hernandez had a floor officer search Plaintiff's cell with negative results. Hernandez left and returned on July 1, 2012, and asked if Plaintiff had a chrono for his medical pillow, to which Plaintiff stated he did and then gave it to him. Plaintiff also tried to give Hernandez a Trust Withdrawal Order so he could have whatever property he could not have sent home, but Hernandez refused, saying, "I don't do that," and walked away. On his return, he brought a large plastic bag which contained his cervical pillow. Plaintiff inquired of the rest of his property, and Hernandez shouted, "you refused your property." He then walked away. Plaintiff has not heard about his property since then. Plaintiff contends Defendants deprived him of his personal property without due process of law in violation of the state and federal constitutions.

Plaintiff further alleges that Defendants retaliated against him for exercising his First Amendment constitutional right to petition the government for a redress of grievance.

Plaintiff complains that he wrote a grievance on April 26, 2012, concerning Defendant Gallardo's actions, but the grievance disappeared.

Plaintiff states he wrote three grievances concerning Defendant Stoll's actions. The first two allegedly disappeared, and the third was returned on July 31, 2012, with no response to the problem.

Plaintiff states he wrote a CDCR-22 Request for Interview addressed to Sgt. Tomakta. Plaintiff states this CDCR-22 was wrongly responded to by Defendant Banuelos who falsely contended that all allowable property had been returned to Plaintiff, that his appliances were in working order, and that Plaintiff had refused some of the property. Plaintiff responded to the CDCR-22 that some of his property was not being returned, but the CDCR-22 was never returned.

Plaintiff's second CDCR-22 was addressed to Defendant Banuelos. Banuelos responded that Plaintiff had refused his property and refused to sign a CDCR-193 while housed in 4A4L-24, and as such, his property was being disposed of.

Plaintiff states his second grievance (Log #CSPC-5-12-03080) was wrongly delegated to Defendant Hernandez. Plaintiff states he was supposed to receive a "First Level Interview" but

instead Hernandez came to argue with him and dispute his documents. Plaintiff states Hernandez refused Plaintiff's requested witness and wrongly stated that Plaintiff refused to sign a CDCR-193 for the disposition of his property. Plaintiff states on July 1, 2012, he attempted to complete a CDCR-193 for Defendant Hernandez, but Hernandez refused to accept it.

Plaintiff claims Defendant Harrison failed to screen the grievance for fifteen days after he'd submitted it, and then returned it allegedly because Plaintiff had written a letter to the warden. Plaintiff claims he submitted a request that his grievance be returned, and the request was answered by Harrison. Harrison said it was not due to be returned until August 3, 2012. On August 12, 2012, Plaintiff followed up with another request for a return of grievance. Plaintiff alleges that Harrison lied and said the grievance had been completed and returned to Plaintiff on July 26, 2012. Harrison suggested that if Plaintiff needed a copy, he could request it from his correctional counselor. Plaintiff attempted to secure a copy but was denied because he did not have sufficient funds.

Plaintiff obtained an Olsen Review and found that grievance #03080 was missing from his central file. After numerous efforts over a period of six months, Plaintiff obtained a copy of grievance #03080.

Plaintiff further contends that Defendant Cribbs arbitrarily rejected his grievance #06531 against Defendant Harrison, stating, "your original appeal was completed and returned to you on 7-26-12. If you are requesting a copy, you must provide a trust withdrawal." Plaintiff did so but he received it back with a notice that he must provide a trust withdrawal. Plaintiff did so again, and it was returned to him with the notice that his trust account balance was zero, so his request would not be completed at that time. Plaintiff resubmitted his grievance and pointed out that he was entitled to a copy of grievance #03080. Defendant Cribbs then attached a copy of grievance #03080 and advised Plaintiff that his claims that appeals office staff deliberately refused to return his appeal has no merit as his appeal was completed and returned to him via institutional mail on July 26, 2012. Plaintiff contends this action on grievance #06531 denied his channel of grievance.

Plaintiff then resubmitted both grievances (03080 and 06531). Defendant Cribbs immediately canceled grievance #03080 for failing to resubmit it after it was sent back to him on July 26, 2012. Shortly thereafter, grievance #06531 was arbitrarily canceled for failing to correct

and return a rejected appeal within thirty calendar days. Plaintiff suggests that it can be inferred that Defendant Cribbs canceled the grievance. Plaintiff further contends the cancellation was erroneous because his appeal was well within the time limits.

Plaintiff concludes that Defendants Gallardo, Stoll, Banuelos, Hernandez, Harrison, and Cribbs retaliated against him for exercising his rights to file grievances by canceling his grievances, by failing to respond to them, or by destroying them.

**C. DISCUSSION**

1. Due Process

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13, 104 S.Ct. 3194 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

Plaintiff's allegations in his First Amended Complaint are the same as in the initial complaint. As the Court previously stated, the deprivation or destruction of Plaintiff's personal property was the alleged result of Defendants' unauthorized intentional or negligent wrongdoing. As such, the Due Process Clause does not provide redress for the loss of personal property under circumstances described by Plaintiff. Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194 (1984); Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). Furthermore, Plaintiff's assertion that he had a protected liberty interest at stake lacks merit. Wilkinson v. Austin, 545 U.S. 209, 221-23, 125 S.Ct. 2384 (2005); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Plaintiff's due process claims

should be dismissed.

2. Retaliation

As in his initial complaint, Plaintiff alleges that Defendants Gallardo, Stoll, Banuelos, Hernandez, Harrison, and Cribbs retaliated against him. Plaintiff alleges that Defendants are liable with respect to their handling of Plaintiff's inmate grievances. As previously explained, prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D.Cal. 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D.Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 319 Ark. 312, 891 S.W.2d 375, 1995 WL 29580 (N.D.Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D.Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).

Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment. Such a claim would be based on the theory that interference with the grievance process resulted in a denial of the inmate's right to access to the courts. This right includes petitioning the government through the prison grievance process. See Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir.1995) (discussing the right in the context of prison grievance procedures). The right of access to the courts, however, only requires

that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356–57. Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n. 3 & 354–55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed. See id. at 354–55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir.2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

In this case, Plaintiff alleges, as he did in his initial complaint, that Defendants interfered with his ability to present grievances. He does not allege that such interference resulted in any actual injury with respect to contemplated or ongoing habeas or civil rights litigation. To state a claim, the interference complained of would have had to result in Plaintiff being unable to present or pursue a habeas or civil rights claim. Plaintiff has not indicated any such inability. Rather, Plaintiff alleges that the interference resulted in a deprivation or loss of personal property. Thus, Plaintiff fails to state a claim.

**D. CONCLUSION AND RECOMMENDATION**

Plaintiff's complaint fails to state a claim upon which relief may be granted under section 1983. Plaintiff was previously provided with the opportunity to amend and he was unable to cure the deficiencies. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez, 203 F.3d at 1130. Based on the nature of the deficiencies, further leave to amend is not warranted, and the Court HEREBY RECOMMENDS as follows:

1. Plaintiff's complaint be dismissed, without leave to amend, for failure to state a claim under section 1983;
2. The Clerk of Court be directed to enter judgment; and
3. The dismissal count as a strike under 28 U.S.C. § 1915(g).

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

Dated: **February 24, 2016**

/s/ Dennis L. Beck

UNITED STATES MAGISTRATE JUDGE